# Illinois Official Reports

## Appellate Court

---

### *Mayle v. Urban Realty Works, LLC*, 2020 IL App (1st) 191018

---

| | |
|---|---|
| Appellate Court Caption | KEN MAYLE, ANTONIO CLARK, TONY SISILLIANO, ZACHARY BLEWS, and PHIL BOBROFF, Plaintiffs-Appellants, v. URBAN REALTY WORKS, LLC; 660 LAKE LLC; DEMETRIOS KOULIOUFAS; HARRY KOULIOUFAS; IRENE KOULIOUFAS; ANTHONY ROUCHES; ERIC JOHNSTONE; and BAY-RON PARKER, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>No. 1-19-1018 |
| Filed | March 26, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-6322; the Hon. Thomas R. Mulroy Jr., Judge, presiding. |
| Judgment | Appeal dismissed. |
| Counsel on Appeal | Joan M. Fenstermaker and Nicholas Bailey, of Joan M. Fenstermaker, P.C., of Chicago, for appellants.<br><br>Robert T. Metz, of Law Offices of Mark E. Edison P.C., of Oak Brook, for appellees Urban Realty Works, LLC, and Anthony Rouches.<br><br>Kurt H. Feuer, of Evanston, for appellee Eric Johnstone. |

Marc D. Sherman, of Marc D. Sherman & Colleagues, P.C., of Lincolnwood, for appellees Demetrios Koulioufas, Harry Koulioufas, and Irene Koulioufas.

No brief filed for other appellees.

Panel        PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Burke concurred in the judgment and opinion.

## OPINION

¶ 1      The instant appeal arises from the dismissal of plaintiffs' 11-count complaint against defendants as a result of plaintiffs' eviction from an apartment building. The trial court dismissed six counts of the complaint, arising under the Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010 *et seq.* (amended Mar. 31, 2004)), based on the statute of limitations. The trial court subsequently dismissed the remaining five counts of the complaint for failure to state a cause of action. Plaintiffs appeal, and for the reasons that follow, we dismiss the appeal for lack of jurisdiction.

¶ 2      BACKGROUND

¶ 3      On June 22, 2017, plaintiffs Ken Mayle, Antonio Clark, Tony Sisilliano, Zachary Blews, and Phil Bobroff filed an 11-count complaint against defendants Urban Realty Works, LLC (Urban Realty Works); 660 Lake, LLC (660 Lake); Demetrios Koulioufas, Harry Koulioufas,[1] Irene Koulioufas, Anthony Rouches, Eric Johnstone, and Bay-Ron Parker. The complaint alleged that, in September 2012, plaintiffs moved into an apartment on Lake Street in Chicago, which was owned by Chicago Title Land Trust Company as trustee under trust number 1090074 dated June 23, 1987. According to the complaint, defendants Demetrios Koulioufas, Harry Koulioufas, and Irene Koulioufas (collectively, the Koulioufas defendants) were the beneficiaries of the trust. On August 8, 2013, the trust conveyed ownership of the apartment to defendant 660 Lake. Prior to the sale, and in contemplation of the sale, the Koulioufas defendants engaged Urban Realty Works to manage the premises "and to remove Plaintiffs from the Premises so that the Premises would be vacant at the time of sale." The complaint alleged that defendants Rouches, Johnstone, and Parker "acted in furtherance of the plan to remove Plaintiffs from the Premises so that the Premises would be vacant at the time of sale."

¶ 4      The complaint alleged that, on July 31, 2013, Urban Realty Works and Parker served a five-day notice on " 'Josh and all occupants' "[2] of the apartment; the complaint alleged that

---

[1]The complaint originally named as a defendant "Henry" Koulioufas, but it was amended on its face on November 27, 2017, to correct the first name of this defendant to "Harry" Koulioufas.

[2]None of the plaintiffs is named Josh.

- 2 -

"[d]efendants, individually or through their agents," unlawfully entered the premises to serve plaintiff Clark with the notice. Prior to receiving the notice, plaintiffs paid $1600 per month to defendant Demetrios Koulioufas.

¶ 5    Count I of the complaint was against all defendants and alleged that defendants violated section 5-12-060 of the RLTO (Chicago Municipal Code § 5-12-060 (amended Nov. 6, 1991)) by making an unlawful entry into the apartment.

¶ 6    Counts II through VI were by each plaintiff against all defendants, and all alleged that defendants violated section 5-12-160 of the RLTO (Chicago Municipal Code § 5-12-160 (amended Nov. 6, 1991)), which prohibited a landlord from interrupting a tenant's occupancy without authority of law. Counts II through VI alleged that, after service of the five-day notice, between August 6 and August 21, 2013, defendants "individually or through their agents" unlawfully entered the apartment and removed and disposed of plaintiffs' personal property.

¶ 7    Counts VII through XI were by each plaintiff against all defendants and alleged conversion of personal property. Each count alleged that the named plaintiff had an absolute and unconditional right to possession of the property; that he had demanded possession of the property; and that defendants wrongfully assumed control, dominion, and ownership of the property. Each count also alleged that the actions of defendants were done with malicious intent.

¶ 8    Attached to the complaint was a copy of a document titled "Landlord's Five Day Notice," which was directed to "Josh and all occupants" and ordered the termination of the tenancy as of August 7, 2013. The notice was dated July 31, 2013, and contains an "affidavit of service" signed by defendant Parker, who was listed as the property manager, which stated that he served the notice on that date; the notice purports to be notarized, with a signature on a notary line, but bears no notary stamp, and no date is written into the space above the notary's signature line. Also attached to the complaint were copies of several canceled checks to defendants Demetrios Koulioufas and Harry Koulioufas, which were each for $1600, many of which contained the word "rent" on the memo line. Finally, attached to the complaint were itemized lists of personal items allegedly converted by defendants.

¶ 9    On October 23, 2017, defendant Rouches filed a motion to dismiss counts I through VI of the complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)), claiming that the building in which plaintiffs allegedly lived was commercial, not residential, meaning that the RLTO did not apply, and further claiming that plaintiffs' claims under the RLTO were time-barred.

¶ 10   On November 15, 2017, defendant Johnstone filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2016)), seeking dismissal of counts I though IV under section 2-619 and of counts VII through XI under section 2-615 (735 ILCS 5/2-615 (West 2016)). With respect to counts I through VI, like Rouches, Johnstone claimed that the counts based on the RLTO were time-barred. With respect to counts VII through XI, Johnstone claimed that none of the counts contained specific allegations that would subject him to liability for conversion. Instead, Johnstone argued that "each Plaintiff has merely alleged conclusory legal boilerplate in support of their conversion claims, and not a single specific factual allegation as to Defendant Johnstone."

¶ 11   On November 30, 2017, the Koulioufas defendants filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code, claiming that counts I through VI should be dismissed under section 2-619 because they were time-barred and that the entire complaint

should be dismissed under section 2-615 for failure to plead sufficient facts to support any of plaintiffs' causes of action.

¶ 12    On January 17, 2018, the trial court entered an order dismissing counts I through VI with prejudice based on the statute of limitations. The court further struck counts VII through XI with leave to replead them.[3]

¶ 13    On March 13, 2018, plaintiffs filed an amended complaint, adding a number of factual allegations. Counts I through VI of the amended complaint were identical to the previously dismissed counts I through VI of the original complaint, repleaded to preserve them for appeal. Counts VII through XI were also identical to the prior versions of those counts, other than incorporating the additional factual allegations. The amended complaint also included the same exhibits as the original complaint, namely, the "Landlord's Five Day Notice," the canceled checks, and the lists of personal property.

¶ 14    On April 11, 2018, defendant Johnstone filed a motion to dismiss the amended complaint pursuant to section 2-615 of the Code, claiming that the allegations of the complaint directed at him merely set forth conduct that was consistent with the usual, lawful conduct of the agent for the purchaser of a property and that plaintiffs had failed to set forth any allegations that would subject him to liability.

¶ 15    On April 16, 2018, the Koulioufas defendants filed a combined motion to dismiss counts VII through XI of the amended complaint, claiming that those counts should be dismissed under section 2-615 because they failed to plead specific allegations of ultimate fact for each element of a conversion claim. The Koulioufas defendants further claimed that counts VII through XI should be dismissed under section 2-619 because plaintiffs failed to plead that an agency relationship existed that would subject the Koulioufas defendants to liability.

¶ 16    Attached to the Koulioufas defendants' motion to dismiss, in support of their section 2-619 motion, were the affidavits of the three Koulioufas defendants, in which they averred that they never retained defendant Urban Realty Works in connection with the property; they never engaged or asked defendants Rouches, Johnstone, or Parker to deal in any way with any person at the property; they never asked anyone to serve any notices concerning the property; and they never removed any personal property from the property and never asked anyone to do so. The Koulioufas defendants further averred that plaintiffs never informed any of them that plaintiffs' personal property had been taken and never made a demand for the return of any such property.

¶ 17    On April 23, 2018, defendant Rouches filed a combined motion to dismiss the amended complaint, claiming that counts VII through XI should be dismissed pursuant to section 2-615 of the Code because any specific allegations directed at Rouches merely described conduct that was consistent with the usual, lawful manner of a real estate sale and the allegations related to the alleged removal of plaintiffs' personal property were vague and insufficient to impose liability on Rouches.

---

[3]We note that the trial court's order indicated that one of the motions before it was Rouches's "Motion to Dismiss (2-619.1)." However, as set forth above, Rouches did not, in fact, file a combined motion to dismiss the complaint but filed a motion to dismiss counts I through VI solely under section 2-619. Rouches did not seek to dismiss counts VII through XI but instead filed an answer to those counts. However, as plaintiffs amended their complaint twice as a result of the court's order and it is counts VII through XI of the second amended complaint at issue on appeal, we have no need to consider the impact of any error in dismissing counts VII through XI with respect to all defendants.

¶ 18     On June 27, 2018, the trial court entered an order granting the motions to dismiss based on section 2-615 but granted plaintiffs leave to file an amended complaint.

¶ 19     On September 20, 2018, plaintiffs filed a second amended complaint, adding additional factual allegations. The second amended complaint alleged that in August 2009, plaintiff Bobroff began renting the apartment, which was a "residential loft-style second floor apartment," from defendant Harry Koulioufas pursuant to an oral month-to-month tenancy; plaintiff Bobroff paid defendant Harry Koulioufas $500 as a security deposit. In 2012, the other four plaintiffs moved into the apartment, each paying a $500 security deposit. During their tenancy, plaintiffs would collect their mail and pay rent to defendant Harry Koulioufas at the restaurant on the ground floor of the building next door, which was owned by defendants Demetrios and Harry Koulioufas. The restaurant closed in May 2013, and plaintiffs observed a note posted on the door to the restaurant directing them to pay their rent to defendant Demetrios Koulioufas, which they did.

¶ 20     The second amended complaint alleged that, in June 2013, plaintiffs noticed defendants Rouches and Johnstone at the building in which the apartment was located. They advised plaintiff Bobroff that defendant Harry Koulioufas "was 'gone,' that the Property had been sold and that Plaintiffs had 'had a good run, but it's over.' " They also advised plaintiff Bobroff that plaintiffs would be required to vacate the apartment by August 1, 2013. Plaintiffs informed defendants Rouches and Johnstone that they needed more time to vacate the apartment. Defendants Rouches and Johnstone also asked plaintiffs to allow architects into the apartment, which plaintiffs permitted.

¶ 21     The second amended complaint alleged that, in July and August 2013, defendants Rouches, Johnstone, and Parker had meetings in the closed restaurant with several of the plaintiffs individually. During those meetings, defendants Rouches and Johnstone "made vague offers to Plaintiffs about offering assistance to Plaintiffs to move." They stated that they would not offer plaintiffs any money but would provide them with movers; defendants Rouches and Johnstone told plaintiff Bobroff that " 'August 1st is our key date.' " Plaintiffs did not reach any agreements with defendants Rouches and Johnstone during those meetings, and defendants Rouches and Johnstone told plaintiff Bobroff that " '[w]e hire people that professionally do this,' " meaning having plaintiffs removed from the apartment. On the day of his meeting, plaintiff Bobroff asked defendant Johnstone for a business card; defendant Johnstone replied by falsely asserting that he worked for "RPM Assets."

¶ 22     The second amended complaint alleges that, during his meeting, defendant Parker told plaintiff Mayle that any discussions about his being able to remain in the apartment needed to take place with defendant Johnstone. Defendant Parker later told plaintiff Mayle that he had discussed the situation with defendants Johnstone and Rouches and they had decided to evict plaintiffs.

¶ 23     The second amended complaint alleged that, on July 31, 2013, defendants Urban Realty Works and Parker served a "Landlord's Five Day Notice" on " 'Josh and all occupants' " of the apartment; defendant Rouches was present when the notice was delivered. However, no one named "Josh" resided in the apartment, and plaintiffs did not know anyone named "Josh." On the same day, plaintiffs Clark and Sisilliano observed defendant Parker break down the front door of the apartment. Also on July 31, 2013, "Defendants moved several people who were strangers to Plaintiffs," including defendant Parker, into the apartment. The people moving into the apartment told plaintiff Mayle that they were being paid by defendant

Johnstone. Shortly thereafter, defendant Johnstone came to the property and told plaintiff Mayle that Mayle "had to 'get out' of the Apartment."

¶ 24 The second amended complaint alleged that on August 2, 2013, plaintiff Mayle sent an e-mail to the e-mail address posted on the door of the restaurant next door, asking for information about what was happening at the apartment, asking that a broken lock be repaired, and asking whether an eviction lawsuit had been filed against any of the plaintiffs. The next day, plaintiff Mayle received a response providing: " 'You guys are fine for right now. We need access to the building. I'll get the locks fixed. We'll figure something out with you guys. We aren't going to start any work on the building this month. Maybe to do some repairs. I'll be in touch with you in a few days. What is your phone number?' " Plaintiff Mayle responded the next day with his phone number.

¶ 25 The second amended complaint alleged that on August 6, 2013, plaintiff Bobroff returned to the apartment to find that "Defendants" had caused his personal belongings to be removed from the apartment and left out in the rain. "Defendants" also caused the steel door dividing plaintiff Bobroff's portion of the apartment from the rest of the space to be locked and placed a mechanical device on the door to prevent it from being opened. The second amended complaint alleged that defendant Parker "and his associates physically prevented Plaintiffs from having full access to the Apartment." On the same day, defendant Rouches called plaintiff Mayle at least four times. The next day, defendant also sent plaintiff Mayle several text messages.

¶ 26 The second amended complaint alleged that on August 9, 2013, defendant Rouches sent plaintiff Mayle a text message indicating that the locks would be changed and asking whether " 'almost everyone [was] out.' " On the same day, "[d]efendants" caused all of the personal property in the apartment belonging to plaintiff Blews to be removed from the apartment and thrown into the garbage. On August 10, 2013, "Defendants" caused the locks to the apartment door to be changed and refused to provide keys to plaintiffs. On the same day, plaintiff Mayle sent defendant Rouches a text message asking for defendant Parker's phone number, saying that he had observed Parker changing the lock and Parker had not left a key. Defendant Rouches responded by providing plaintiff Mayle defendant Parker's phone number the next day. On August 11, 2013, plaintiff Mayle hired a locksmith to attempt to regain access to the apartment, but defendant Parker's "associates" prevented the locksmith from attempting to access the apartment.

¶ 27 The second amended complaint alleged that on August 9, 2013, the trust that owned the property conveyed ownership of the property to defendant 660 Lake and that, at the time the majority of plaintiffs' personal property was removed, the trust still held legal title to the property. The second amended complaint alleged that, on information and belief, defendant Johnstone was a member and the registered agent of defendant 660 Lake. The second amended complaint further alleged that, on information and belief, defendant Rouches was the manager and a member of defendant Urban Realty Works. The amended complaint alleged that defendants Rouches, Johnstone, and Parker "acted in furtherance of the plan to remove Plaintiffs from the Apartment so that the Apartment would be vacant." Finally, the amended complaint alleged that on August 22, 2013, "Defendants" caused plaintiffs' remaining personal property to be removed from the apartment and thrown into the garbage.

¶ 28 The second amended complaint again repleaded counts I through VI to preserve them for appeal. As with the amended complaint, the second amended complaint also realleged the

allegations of counts VII through XI, with the only change being the incorporation of the additional factual allegations as set forth above.

¶ 29    On October 1, 2018, defendant Johnstone filed a motion to dismiss the second amended complaint pursuant to section 2-615 of the Code, claiming that the second amended complaint merely repleaded the same insufficient allegations as in the previous complaint. Defendant Johnstone claimed that the few new allegations were vague and did not cure the defects of the previously dismissed amended complaint.

¶ 30    On October 2, 2018, the Koulioufas defendants filed a combined motion to dismiss counts VII through XI of the second amended complaint, claiming that the second amended complaint failed to cure the defects of the prior pleadings and should be dismissed under section 2-615 of the Code. They also claimed that the second amended complaint should be dismissed under section 2-619 because their affidavits showed that they were entitled to judgment as a matter of law. In support of their section 2-619 motion, the Koulioufas defendants attached to the motion to dismiss the same affidavits as had been attached to their prior motion to dismiss.

¶ 31    On October 9, 2018, defendant Rouches filed a combined motion to dismiss the second amended complaint, claiming that counts VII through XI of the second amended complaint should be dismissed under section 2-615 because they failed to allege sufficient facts to support a cause of action.

¶ 32    On November 15, 2018, the trial court entered an order dismissing counts VII through XI of the second amended complaint with prejudice with respect to defendants Rouches and Johnstone and the Koulioufas defendants. On the same day, the trial court entered an order finding defendants Urban Realty Works and 660 Lake in default for failure to appear.[4] On February 21, 2019, plaintiffs filed a motion for a default judgment against defendants Urban Realty Works and 660 Lake, and on February 28, 2019, the trial court entered judgment against them with respect to each plaintiff.

¶ 33    On March 8, 2019, defendant Urban Realty Works filed its appearance and, on March 11, 2019, it filed a motion to vacate the default judgment. On the same day, it filed a combined motion to dismiss the second amended complaint, arguing that counts VII through XI should be dismissed under section 2-615 for failure to state a claim. On April 16, 2019, the trial court granted defendant Urban Realty Works' motion to vacate the default judgment and also granted its motion to dismiss.

¶ 34    On May 15, 2019, plaintiffs filed a notice of appeal, and this appeal follows.

¶ 35                                        ANALYSIS

¶ 36    On appeal, plaintiffs challenge both the section 2-619 dismissal of counts I through VI of the complaint and the section 2-615 dismissal of counts VII through XI. First, however, we must determine our jurisdiction to consider the instant appeal. Neither party has contested the jurisdiction of this court. However, it is our duty to determine whether we have jurisdiction, regardless of whether the issue is raised by the parties.[5] *Secura Insurance Co. v. Illinois*

_____

[4]The order did not address defendant Parker, who appears to have never been served and did not file an appearance.

[5]We asked the parties to address the issue at oral argument, and both parties presented jurisdictional arguments at that point.

*Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue."); *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67 ("Although neither party raises the issue of jurisdiction, an appellate court has an independent duty to consider whether or not it has jurisdiction to hear an appeal."). The question of whether we have jurisdiction over the instant appeal presents a question of law, which we review *de novo. In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25; *In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 37    Plaintiffs claim in their brief that we have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), because "[t]he trial court dismissed [plaintiffs'] last remaining claim on April 16, 2019." However, this is not entirely accurate. Plaintiffs filed suit against eight defendants: Urban Realty Works, 660 Lake, the three Koulioufas defendants, Rouches, Johnstone, and Parker. The trial court dismissed counts I through VI with prejudice on January 17, 2018, based on section 2-619 of the Code. The trial court dismissed counts VII through XI with prejudice "as to Defendants Demetrios Koulioufas, Irene Koulioufas, Harry Koulioufas, Anthony Rouches, and Eric Johnstone" on November 15, 2018, based on section 2-615 of the Code. The trial court entered a default judgment against defendants Urban Realty Works and 660 Lake on February 28, 2019. Finally, on April 16, 2019, the default judgment against defendant Urban Realty Works was vacated, and counts VII through XI were dismissed under section 2-615. Thus, as of April 16, 2019, the trial court had expressly resolved all of the claims with respect to seven of the eight defendants. However, plaintiffs' jurisdictional argument overlooks their claims against defendant Parker, who was never served with process and never filed an appearance but who nonetheless remained a named defendant throughout the instant litigation.

¶ 38    Under Rule 304:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 39    Even though Parker was not served with process and did not file an appearance, he is considered a "party" for purposes of Rule 304's requirements. *Mares v. Metzler*, 87 Ill. App. 3d 881, 885 (1980) (although not served, a named defendant remained a "party" within the context of Rule 304); *Ogden Group, Inc. v. Spivak*, 92 Ill. App. 3d 932, 933-34 (1981) (same); *Zak v. Allson*, 252 Ill. App. 3d 963, 965 (1993) (same). Thus, generally, in order for the dismissal to be appealable, the trial court would have needed to make the findings required by Rule 304(a). In the case at bar, the trial court made no such findings.

¶ 40    However, in some cases, the presence of a nonserved defendant does not render an order unappealable, even in the absence of Rule 304(a) language. In those cases, the dismissal of the complaint with respect to one defendant has been found to dispose of the case with respect to

all of the unserved defendants as well. For instance, courts have found jurisdiction when the served defendants and the nonserved defendants represented a "unified tortfeasor" such that the dismissal order dismissed the complaint in its entirety. See, *e.g.*, *Merritt v. Randall Painting Co.*, 314 Ill. App. 3d 556, 559 (2000) (nonserved defendants were allegedly agents and employees of served defendant); *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 455 (2006) (nonserved defendants were agents of served defendant). Additionally, appellate jurisdiction has been found where the trial court's order indicated that it intended to dismiss the complaint in its entirety as to all defendants. See, *e.g.*, *Byer Clinic & Chiropractic, Ltd. v. State Farm Fire & Casualty Co.*, 2013 IL App (1st) 113038, ¶ 14 (finding that the trial court's "decisive word choice, 'this case is dismissed,' " along with a finding that other defendants were not properly party defendants, "is an all-encompassing dismissal order confirming the court's intention to dismiss the complaint in its entirety as to all named defendants," including the defendant who had not appeared).

¶ 41    In the case at bar, during oral argument, plaintiffs argued that such exceptions apply to their case so that we have jurisdiction to consider the instant appeal. However, the cases relied on by plaintiffs do not present the same type of situation as present in the case at bar. For instance, in *Merritt*, we considered a negligence action against seven defendants as a result of a window screen striking and injuring the plaintiff. Only three of the defendants were served and appeared in the case; the other four defendants were never served and did not appear. *Merritt*, 314 Ill. App. 3d at 558. The trial court granted a motion to dismiss based on the statute of limitations, dismissing the complaint with prejudice. *Merritt*, 314 Ill. App. 3d at 558. On appeal, we found it necessary to determine whether we had jurisdiction, as "[a]n argument can be made" that the dismissal applied only to the three served defendants and not to the four unserved defendants, in which case the dismissal order would not be appealable because it lacked the required Rule 304(a) language. *Merritt*, 314 Ill. App. 3d at 558-59. Citing *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113 (1978), we found:

> "In the instant case, the liability of Randall Painting Company, one of the defendants that was served and moved for dismissal, is predicated, in part, upon the alleged acts of its agents and employees, the four unserved defendants. Accordingly, as to the acts alleged to have been committed by the four unserved defendants, Randall Painting Company and those defendants constitute a unified tortfeasor. [Citation.] Furthermore, the claims asserted against Randall Painting Company under the theory of *respondeat superior* and those asserted against the four unserved defendants 'are one and the same' [citation]. Under these circumstances, we interpret the trial court's order as a dismissal of the complaint in its entirety. Accordingly, we find we have jurisdiction over the instant appeal under Rule 301." *Merritt*, 314 Ill. App. 3d at 559.

¶ 42    In the case at bar, however, we cannot find that such an exception applies. The trial court's January 17, 2018, order, which provided that "the RLTO claims of Counts I through VI are dismissed with prejudice based on the statute of limitations" could be considered the type of "all-encompassing dismissal order" found sufficient to confer jurisdiction in *Byer*. However, the other orders entered by the trial court, dismissing counts VII through XI, are all expressly directed at particular defendants and are not "all-encompassing." Additionally, despite plaintiffs' claims to the contrary, defendant Parker cannot be considered a "unified tortfeasor" such that the exception noted in *Merritt* or *Cangemi* applies. The second amended complaint

does not allege that defendant Parker was an agent or employee of defendants Urban Realty Works or 660 Lake and that his conduct was done in the course of his employment or agency.

¶ 43 Plaintiffs point to several paragraphs in their second amended complaint that they claim support an argument that defendant Parker was employed by one of the other defendants. However, after examining these paragraphs, we cannot agree with plaintiffs' assertion. These paragraphs certainly allege that defendant Parker was acting in concert with some of the other defendants. However, there is no allegation of his agency or employment by any of the other defendants such that liability of the master would be based on liability of the servant. The complaint alleges that defendant Johnstone was an agent of 660 Lake and that defendant Rouches was a manager of Urban Realty Works; no such allegation appears concerning defendant Parker. At most, the complaint alleges that "[o]n or about July 31, 2013, Defendants moved several people who were strangers to Plaintiffs, including Defendant BAY-RON PARKER, into the Apartment. The people moved into the Apartment told Plaintiff KEN MAYLE that Defendant ERIC JOHNSTONE was paying them." Despite plaintiffs' suggestion to the contrary, this allegation does not support plaintiffs' conclusion that defendant Parker was defendant Johnstone's employee, and no such allegation appears anywhere in the second amended complaint.

¶ 44 Moreover, the second amended complaint alleges conduct attributable to defendant Parker alone and not to any other defendants—for instance, it alleges that Parker broke down the front door of the apartment and that he also physically prevented plaintiffs from having full access to the apartment. The basis for the dismissal of counts VII through XI under section 2-615 was the insufficiency of the allegations tying defendants to the alleged conversion of plaintiffs' personal property, a necessarily fact-specific determination, as can be seen from the fact that each of the defendants sought dismissal separately (other than the three Koulioufas defendants, who acted collectively). Thus, a determination that the second amended complaint failed to state a cause of action with respect to the other defendants does not necessarily lead to the conclusion that dismissal was warranted in defendant Parker's case. Accordingly, a Rule 304(a) finding was necessary in order to render the trial court's dismissal orders appealable. Absent such a finding, we must dismiss the instant appeal for lack of jurisdiction.

¶ 45                                    CONCLUSION

¶ 46 The instant appeal is dismissed for lack of jurisdiction. The trial court's orders did not dispose of all claims against all defendants, and the claims against defendant Parker were not of the type that would be encompassed by the trial court's dismissal of the remainder of the complaint such that an exception to Rule 304's requirements would apply. Consequently, the absence of Rule 304(a) language deprives us of the jurisdiction to consider plaintiffs' claims on appeal.

¶ 47 Appeal dismissed.