2024 IL App (1st) 220960

SIXTH DIVISION
August 2, 2024

No. 1-22-0960

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PETEY'S TWO REAL ESTATE, LLC; ASHTON DRIVE, LLC; CHICAGO TITLE LAND TRUST COMPANY, as Trustee Under a Trust Agreement Dated October 8, 1973 and Known as Trust No. 996, CHICAGO TITLE LAND TRUST COMPANY, as Trustee Under a Trust Agreement Dated December 4, 1970 and Known as Trust No. 1147; and PETER KATTOS, | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | No. 2019 L 000983 |
| v. | ) ) ) | The Honorable Jerry A. Esrig, Judge Presiding. |
| THOMAS GOEDERT and DOMMERMUTH, COBINE, WEST, GENSLER, PHILIPCHUCK, COORIGAN & BERNHARD, LTD. | ) ) ) ) | |
| Defendants-Appellees. | ) ) | |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice C.A. Walker concurred in the judgment and opinion

**OPINION**

¶ 1    This legal malpractice action arises out of a condemnation action. Critical to an understanding of why the plaintiffs-condemnees' malpractice action against their attorney fails is that their appraisal expert, in determining the value of their condemned property, violated the "unit

rule" by adding the value of the land to the value of the improvements. Our supreme court has explained:

> "[T]he fair market value of improved property is not the sum of the value of the building and the value of the land computed separately. For this purpose, the whole does not necessarily equal the sum of the parts. The value of unimproved land, adaptable for any use, may diminish, as land, when improved by the construction of a building and so committed to a particular use. For similar reasons, the construction of a building may not produce an increment in value equal to its cost, since the improvement may not be desirably situated. To avoid misleading and confusing the jury, the evidence may properly be confined to the value directly at issue, that is, the value of the improved land as a whole."
>
> *Department of Public Works & Buildings v. Lotta*, 27 Ill. 2d 455, 456-57 (1963).

The defendant attorneys could not have rescued the plaintiffs-condemnees from the consequences of that fatal defect in their appraiser's opinion of value, a value the plaintiffs-condemnees refused to abandon in the condemnation proceeding. For this and other reasons, we affirm the decision of the circuit court.

¶ 2                                          I. BACKGROUND

¶ 3      The plaintiffs-condemnees, who we refer to collectively as the plaintiffs, are (a) two limited liability companies, Petey's Two Real Estate, LLC, and Ashton Drive, LLC; (b) two land trusts, Chicago Title Land Trust Company Trust No. 996, and Chicago Title Land Trust Company Trust No. 1147; and (c) Peter Kattos. Peter Kattos and his wife are members of the limited liability companies, which in turn are beneficiaries under the land trusts, which in turn hold title to real property located at the intersection of U.S. Route 6 and U.S. Route 45 in Orland Park, Illinois. Kattos operates a business on a portion of the property known as Petey's II Restaurant and Lounge.

¶ 4       In 2006, the Illinois Department of Transportation (IDOT) brought a condemnation action for a portion of the property owned by the plaintiffs for a road improvement project. After a decade of litigation, the underlying court determined that the preliminary compensation paid by IDOT to the plaintiffs to acquire their property at the commencement of the case was far in excess of its actual fair market value and, therefore, entered a judgment against the plaintiffs in the amount of the excess compensation plus interest. In the instant legal malpractice action, the plaintiffs alleged that their attorney, Thomas Goedert, and the firm he was employed by, Dommermuth, Cobine, West, Gensler, Philipchuck, Corrigan & Bernhard, Ltd. (Dommermuth), were negligent in their representation and that, as a proximate result, the plaintiffs were damaged in the amount of the excess compensation judgment against them. We summarize the condemnation proceedings and allegations in the legal malpractice complaint below.

¶ 5                               A. The IDOT Condemnation Action

¶ 6       On November 14, 2006, IDOT invoked its "quick-take" eminent domain power to acquire fee simple title to approximately two acres of real property owned by plaintiffs. One of the parcels IDOT sought to acquire was improved with the restaurant and would have required the restaurant to be demolished or at least remodeled to reduce its footprint. Goedert, who at the time was employed by the law firm Neal & Leroy, LLC (Neal & Leroy), appeared on behalf of the plaintiffs. On December 27, 2006, IDOT deposited $3,202,000 in preliminary compensation with the Cook County Treasurer, which vested IDOT with title to the property. On January 18, 2007, the circuit court entered an order allowing Marquette Bank, Neal & Leroy, LLC, Ashton Drive, LLC, and Petey's Two Real Estate, LLC to withdraw $3,102,000, leaving $100,000 on deposit with the Cook County Treasurer. On April 4, 2008, after Kattos refused to demolish the restaurant, IDOT

3

amended its complaint to reduce the size of the taking, and on May 7, 2008, IDOT obtained an order vesting title in accordance with the reduced taking.

¶ 7                    1. The Parties Disclose Property Valuation Experts

¶ 8     In September 2015, IDOT disclosed its appraisal expert Frank Lorenz, who valued the taking at $1.52 million, with no damages to the remainder. Plaintiffs were still represented by Goedert, who by that time was employed by Crane, Heyman, Simon, Welch & Clar (Crane). Goedert, on behalf of the plaintiffs, disclosed an expert appraiser, Joseph Thouvenell, who prepared a written appraisal of the subject property.

¶ 9     On November 18, 2015, the Honorable Alexander White, the judge hearing the condemnation action, closed discovery except for expert depositions. After Thouvenell's deposition, the court allowed him to issue a final appraisal report. Thouvenell's final appraisal report, which was issued on December 15, 2015, concluded that the value of the taking exceeded the $3.2 million in preliminary compensation paid by IDOT in 2006.

¶ 10                    2. The Circuit Court Bars Plaintiffs' Valuation Expert

¶ 11     On March 21, 2016, IDOT filed two motions *in limine* to bar Thouvenell's testimony and opinions. In its first motion, IDOT argued that Thouvenell's valuation contained several flaws that made his opinion inadmissible as a matter of law. IDOT's second motion challenged six of the seven comparable properties that Thouvenell relied on for his opinion of the value of the subject property. IDOT did not challenge Thouvenell's reliance on "comparable 5A." On May 25, 2016, Goedert, who was still employed by Crane, requested an extension of time to respond to both motions. Goedert then requested four successive extensions of time to respond, on June 24, 2016, August 25, 2016, October 17, 2016, and December 19, 2016. The first four requests were made by Goedert while he was still employed by Crane. Only the last request for an extension, which was

filed on December 19, 2016, was made by Goedert after he became employed by Dommermuth. Despite seeking five extensions of time, Goedert never filed a response to IDOT's motions *in limine*. On March 30, 2017, Judge White granted IDOT's motions *in limine* and barred Thouvenell's testimony.

¶ 12    On April 4, 2017, IDOT filed a motion for summary judgment on the basis that plaintiffs did not have a valuation expert. No written response was filed by the plaintiffs.

¶ 13                                      3. Final Just Compensation

¶ 14    On April 27, 2017, Judge White granted IDOT's motion for summary judgment, determining that the value of IDOT's taking was $1.52 million. He also ordered each party that took a share of the initial compensation to repay IDOT their proportionate share of $1,582,000, which represented the difference between the preliminary compensation disbursed by the Cook County Treasurer ($3,102,000) and the final compensation determined by the court ($1.52 million). Dommermuth filed a notice of appeal on behalf of the plaintiffs from the judgment entered on April 27, 2017, and then withdrew as the plaintiffs' attorney.

¶ 15                                      B. Underlying Appeals

¶ 16    Plaintiffs retained successor counsel, Figliulo & Silverman, P.C. (successor counsel), to represent them in the appeal of the judgment entered on April 27, 2017. On appeal, plaintiffs argued that Judge White erred in granting IDOT's motions *in limine* because errors in Thouvenell's appraisal went to the weight rather than the admissibility of his opinion and because the sales comparables that Thouvenell relied on were proper. Consequently, they argued that Judge White also erred in granting summary judgment in favor of IDOT. In *People ex rel. Department of Transportation v. Greatbanc Trust Co.*, 2018 IL App (1st) 171315, we affirmed Judge White's decisions, finding that plaintiffs had waived any argument challenging the circuit court's ruling

granting IDOT's motions *in limine* and motion for summary judgment by failing to respond to them.

¶ 17    During the pendency of the appeal, on IDOT's motion, the circuit court confirmed the final award of just compensation of $1.52 million and also entered judgment in favor of IDOT and against the plaintiffs and Neal & Leroy in the amount of excess compensation plus both prejudgment and postjudgment interest.

¶ 18    Neal & Leroy then filed a petition to vacate the judgment against it on the basis it was not a party and therefore should not be required to repay any of the initial compensation it received as attorney fees. Judge White agreed and vacated the judgment against Neal & Leroy. IDOT appealed. During the pendency of this appeal, IDOT filed in the circuit court a motion for entry of judgment quantifying the amount of excess compensation that each of the plaintiffs was required to repay. Along with its motion, IDOT filed its "Submission Concerning Judgment Amounts and Interest," which stated:

> "The Final Award of just compensation (the 'Final Award') was set at $1,520,000.00. Because Marquette Bank held a note and mortgage on the property, it held a priority position. Accordingly, Marquette is entitled to $319,054.26 of the Final Award, Subtracting that amount from the Award leaves a balance of $1,200,945.74, which sum is that portion of the Final Award to which Kattos is entitled. However, Kattos received $2,498,877.79 from the preliminary award, which is $1,297,932.05 more than the Final Award. Thus, the total amount of the refund Kattos owes to [IDOT] is $1,297,932.05."

The circuit court granted IDOT's motion and ordered the parties to submit additional briefing so it could determine the amount of interest plaintiffs owed IDOT. On October 24, 2018, after an evidentiary hearing, the circuit court ruled that IDOT was entitled to prejudgment and

postjudgment interest and entered judgment against the plaintiffs and in favor of IDOT for $1,297,932.05, the *pro rata* share of the excess compensation attributed to the plaintiffs, prejudgment interest on the *pro rata* share of the excess compensation in the amount of $174,127.41, and the right to postjudgment interest from the date of entry of the order.

¶ 19 On appeal, we found that Neal & Leroy was not required to return any of the proceeds from the preliminary compensation because the amount it received was on account of attorney fees incurred during its representation of plaintiffs. *Department of Transportation v. GreatBanc Trust Co.*, 2020 IL App (1st) 171393, ¶¶ 37-40. We also held that Judge White did not err in awarding prejudgment interest on the April 2017 judgment amount but did err in awarding interest on the additional judgment amount entered on October 24, 2018. *Id.* ¶¶ 67-70.

¶ 20                               C. The Legal Malpractice Claim

¶ 21 On January 29, 2019, plaintiffs filed their complaint alleging legal malpractice against Goedert and Dommermuth. Dommermuth moved to dismiss the complaint on April 2, 2019. On May 23, 2019, plaintiffs filed an amended complaint alleging Dommermuth and Goedert were negligent in failing to respond to IDOT's motions *in limine* and motion for summary judgment in the condemnation action, failing to correct the errors in Thouvenell's reports, and/or failing to designate a different appraisal expert to testify. On February 28, 2020, the court granted Dommermuth's motion to dismiss the complaint only as to the claim brought by Peter Kattos, individually.

¶ 22 On April 3, 2020, Dommermuth filed a third-party complaint for contribution against Crane, alleging in part that because Dommermuth did not file its appearance in the condemnation action until after the deadline to disclose a new expert or correct the errors in Thouvenell's reports,

Dommermuth was unable to correct the errors in Thouvenell's report and was left without any viable bases to defend against IDOT's motions *in limine* and motion for summary judgment.

¶ 23 On August 17, 2020, Crane filed a motion for summary judgment on Dommermuth's third-party complaint arguing that the viability doctrine, also known as the successor counsel doctrine, precluded liability. Under this doctrine, the "duty of care shifts from the original attorney to the successor *** provided that the successor had the opportunity to undo or avert the harm precipitated by the actions or omissions of the original attorney." *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 980 (2005). The circuit court granted plaintiffs leave to file a brief in connection with Crane's motion for summary judgment to provide its position on the viability doctrine because of the likelihood that the court's ruling could affect the legal sufficiency of the plaintiffs' complaint also. However, plaintiffs did not file a brief. The circuit court also ordered supplemental briefing to address whether there existed any argument that, if made, would have defeated IDOT's motions *in limine* and motion for summary judgment in the condemnation action.

¶ 24 On April 23, 2021, the circuit court denied Crane's motion for summary judgment on Dommermuth's third-party complaint for contribution, explaining:

"[I]t's also clear to me from reading [Judge White's] opinion, which I did, that he read the briefs that were filed in support of the motion [*in limine*] critically, that it didn't just simply cut and paste. So, you know, those are—I start with those three things as established.

* * *

*** [N]othing has been presented to me that in any way remotely suggests that there was an argument that could have been made that would have changed Judge White's mind or that convinces me that he was in any way wrong in what he did. I find that *** Thouvenell clearly explained how he arrived at the opinion. And based on his own

8

description, those opinions were inadmissible as a matter of law. The failure to file a response to the motion *in limine*, in my mind, was of no significance because no such filing could have changed the result. Thouvenell's testimony clearly violated the unit rule. He did not value the parcel as a whole. He determined that the highest and best use of the property was for commercial development with the restaurant intact. But he formulated his opinion by valuing all of the land as if it were vacant. Then he separately valued the restaurant. Then he added the value of the restaurant to the value of the vacant land. Then he subtracted the underlying value of the land as vacant on which the restaurant sits. This type of analysis is precisely what the unit rule forbids. He never valued and conceded that he never valued the entire tract as a whole with the restaurant on it. He also admitted that he did not conduct an appraisal of the remainder after to determine its value. And I find that that also clearly violates Illinois law.

\* \* \*

Nothing that I've read suggests that a response to the motion *in limine* would have convinced Judge White that there was an adequate foundation for [Thouvenell's] opinions even if the first two problems were not fatal, but they were. So for all of those reasons, I find that the failure to file a response to the motion *in limine* had absolutely no bearing on the ultimate outcome in this case."

¶ 25    Plaintiffs then filed an amended complaint on June 1, 2021. Their second amended complaint (SAC) alleged that Dommermuth and Goedert were negligent:

"(a) by failing to understand Thouvenell's Report;

(b) by failing to present an alternative Report disclosing the 'value of the part Taken' theory;

9

(c) by failing to present any argument that the 'value of the part taken' was not addressed in the motions *in limine*;

(d) by failing to negotiate a settlement with IDOT before the adverse orders;

(e) by failing to respond to the Motions *in Limine* to Bar Thouvenell;

(f) by failing to respond to the Motion for Summary Judgment;

(g) by failing to warn plaintiffs of the likely adverse outcome, thereby allowing plaintiffs to mitigate their damages."

¶ 26 Dommermuth moved to dismiss the SAC. The court dismissed the SAC with leave to replead the complaint but without leave to replead allegations relating to the admissibility of Thouvenell's testimony. The circuit court noted that plaintiffs were given an opportunity to state their position on the viability doctrine raised by Crane's motion for summary judgment on Dommermuth's third-party complaint but failed to do so. The court explained:

"In my mind a party cannot sit idly by while another side moves for summary judgment where they have an interest in that motion and fail to raise an argument. So I'm not going to let you now sit and listen to the summary judgment arguments that were made before me six months ago and now come back and tell me that there's either evidence or an argument that would undermine the ruling that I made before.

* * *

What I want to do is lay this out for the Appellate Court so the Appellate Court understands my ruling because my ruling is, No. 1, either this argument was made in front of me before and I decided it, or it's waived because I'll come back to my first position, which is that an interested party may not sit by while a motion for summary judgment is argued that affects that party and fails to introduce evidence, which it has, which would

10

refute the motion or fail to argue an argument that would refute the motion. You just can't do that. That's No. 1.

No. 2, I specifically gave this party an opportunity to raise any issues it wanted to raise, and it didn't do that. So even if there was a general principle that you can't do this, there is a specific part of this case that I gave you an opportunity to do it and you didn't have the opportunity. So that's the first basis for my ruling.

\* \* \*

The second basis for my ruling is I agree that this opinion was inadmissible for all of the reasons I said originally, and I don't believe that even if this argument had been made that Judge White would have changed his mind. So in the alternative I reject the argument in any event."

¶ 27 Plaintiffs filed a third amended complaint (TAC) on January 18, 2022. Count I of the TAC included the allegations in the SAC related to the pretrial motions. In count II, plaintiffs alleged that Goedert and Dommermuth were negligent in that they:

"(a) Failed to advise Plaintiffs that Motions *in Limine* had been filed by IDOT that reasonably challenged the admissibility of Plaintiffs' expert Thouven[e]ll;

(b) Failed to advise Plaintiffs that IDOT's two Motion *in Limine* had been granted;

(c) Failed to advise Plaintiffs that IDOT's Motion for Summary Judgment setting just compensation at $1,520,000 was unopposed and unopposable, and would result in an overpayment of $1,582,000 in preliminary just compensation;

(d) Failed to advise Plaintiffs to refund IDOT $1,582,000 at anytime prior to April 27, 2017, after which point interest began to accrue; and

11

(e) Failed to provide Plaintiffs with sufficient advice about the status of the IDOT case so that Plaintiffs could make informed decisions regarding its handling prior to January of 2018."

¶ 28    Dommermuth filed a motion to dismiss the TAC. At a hearing on the motion, the circuit court had the following exchange with plaintiffs' attorney regarding plaintiffs' claim that they would have acted differently had Dommermuth advised them adequately in the underlying case:

"THE COURT: So again, your clients after these lawyers were out of the picture they still didn't repay the money and stopped the interest from running. They still chose to hang onto the money and allow the interest to continue to run long after these lawyers were out of the picture.

[PLAINTIFFS' COUNSEL]: That's true. We are not seeking that interest from when they took over.

THE COURT: It's not a question of which interest you are seeking. It's a question of whether there's any credibility to your claim that he would have acted differently.

[PLAINTIFFS' COUNSEL]: Well, the point is, Judge, is based on the ruling of this court, right, when you said that the [Thouvenell] report was never going to, you know, save the day so to speak because it was fatally flawed, of course—it's not a credibility issue, Judge. It's an issue of Mr. Kattos never had that information based on your ruling.

THE COURT: But they had new lawyers who could have done the same thing you claim these lawyers should have done and put an end to it.

* * *

THE COURT: *** [F]irst of all, even on a 2-615 motion I am entitled to take into account matters of which I can take judicial notice. And I can take judicial notice of what

12

happened in this case from the beginning until the end. And so I've got a pleading where you say we would have acted differently had we known X, Y, Z. But you get new lawyers who come in and you don't act differently. You continue down the same path that you were on with these prior lawyers. So there's A, the last clear chance doctrine. These lawyers never cut off these damages. Now I understand you're claiming them from a limited time period. But even so, even so, the evidence—the supposition that your clients would have done something different is completely undermined by what they in fact did.

* * *

THE COURT: *** I don't think that you have adequately pled that your clients would have done something different. It's plead in conclusory fashion. There's no facts to support that conclusion. And maybe that would or wouldn't be adequate under other circumstances but it's clearly not adequate where we have a subsequent record of which the court can take judicial notice that indicates that these people were bent on pursuing this appeal no matter what. And they hired subsequent counsel who had the opportunity to tell them no or take a different course. And they didn't do it. They took the same course. So there's nothing here that would suggest other than a conclusion that you have pled without supporting facts that they would have done anything differently."

The circuit court granted Dommermuth's motion and dismissed plaintiffs' TAC with prejudice. Specifically, the order stated:

"1. Defendant Dommermuth's Motion to Dismiss Plaintiffs' Third Amended Complaint is granted for the reasons stated on the record.

2. Plaintiffs' Third Amended Complaint is dismissed, with prejudice.

13

3. This is a final order, it disposes of the case in its entirety and this matter is taken off of the call."

Plaintiffs timely filed this appeal.

¶ 29                                II. ANALYSIS

¶ 30    Before turning to the merits, we must first determine if we have jurisdiction to consider this appeal as a final order where the circuit court did not specifically dispose of the claim against Goedert, who never appeared in the case. Although jurisdiction is not contested, we have an independent duty to ascertain our jurisdiction and do so *de novo. Mayle v. Urban Realty Works, LLC*, 2020 IL App (1st) 191018, ¶ 36. We examine the language of a dismissal order to determine whether the circuit court intended to dismiss the complaint in its entirety. See *Byer Clinic & Chiropractic, Ltd. v. State Farm Fire & Casualty Co.*, 2013 IL App (1st) 113038, ¶ 14 ("The trial court's decisive word choice, 'this case is dismissed,' *** is an all-encompassing dismissal order confirming the court's intention to dismiss the complaint in its entirety as to all named defendants ***."). Here, the circuit court made two conclusive statements showing an intent to dismiss the complaint as to both Dommermuth and Goedert. First, the circuit court ordered that "Plaintiffs' Third Amended Complaint is dismissed, with prejudice." Second, the circuit court stated that "This is a final order, it disposes of the case in its entirety and this matter is taken off of the call." When the circuit court makes clear that it is dismissing a complaint in its entirety, the fact that some defendants were unserved or otherwise did not participate in the proceedings does not preclude our jurisdiction. See *Merritt v. Randall Painting Co.*, 314 Ill. App. 3d 556, 559 (2000). In *Merritt*, we found that because the plaintiff's case against each of the defendants was under the theory of *respondeat superior* the claims against each of the defendants—moving and unserved—were "one and the same" and therefore the dismissal applied to all defendants as "unified tortfeasor[s]."

14

(Internal quotation marks omitted.) *Id.* Here, the claims against Goedert and Dommermuth are "one and the same" because they are predicated on Goedert's actions as an employee of Dommermuth, making them unified tortfeasors. Therefore, we conclude that the order dismissing the TAC is a final order and that we have jurisdiction over this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017). See *Merritt*, 314 Ill. App. 3d at 559.

¶ 31 Our review of a dismissal pursuant to section 2-615 of the Civil Practice Law (735 ILCS 5/2-615 (West 2022)) is *de novo. Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008). A section 2-615 motion challenges the legal sufficiency of the complaint. *Id.* A circuit court will only dismiss a complaint pursuant to section 2-615 if it is clear that no set of facts can be proven that would entitle the plaintiff to recovery. *Id.* On appeal we must determine whether the allegations in the complaint, when construed liberally, taken as true, and viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action. *Id.*

¶ 32 To state a cause of action for legal malpractice, the complaint must allege facts to establish (1) the defendant owed the plaintiff a duty of due care arising from an attorney-client relationship, (2) the defendant breached the duty, (3) the plaintiff suffered an injury in the form of actual damages, and (4) the breach proximately caused the actual damages. *Id.* To satisfy the proximate cause element of legal malpractice, the plaintiff must plead sufficient facts to establish that "but for" the negligence of the attorney, the plaintiff would have successfully defended the underlying suit. *Id.* at 299.

¶ 33 A. The Circuit Court Did Not Err in Dismissing Count I Because Thouvenell's Opinion Was Inadmissible and Therefore Properly Barred

¶ 34 Plaintiffs first argue that circuit court erred in dismissing count I of the TAC because had Goedert filed a response to IDOT's motions *in limine* and motion for summary judgment, Judge

White would have permitted Thouvenell to testify as to the "part taken" and "comparable 5A" property, or at the very least allowed plaintiffs to cross-examine the State's valuation expert witness.

¶ 35     Before reaching the merits, we first address Dommermuth's contention that plaintiffs waived by these arguments by failing to raise them before the circuit court. Forfeiture is the failure to make the timely assertion of a right, and waiver is the intentional relinquishment or abandonment of a known right or privilege. *People v. Sophanavong*, 2020 IL 124337, ¶ 20. Because there is nothing in the record to suggest that plaintiffs intentionally relinquished or abandoned the issue, Dommermuth's argument is actually one of forfeiture, not waiver. In undertaking a forfeiture analysis, we take note that plaintiffs did not advance any position when the court gave them an opportunity to file a brief in response to Crane's motion for summary judgment on Dommermuth's third-party complaint, which raised arguments about the part taken and "comparable 5A" that, if successful, would have also defeated plaintiffs' claims against Goedert and Dommermuth. Nor did plaintiffs adopt Crane's arguments. Nevertheless, having examined the record, we find that plaintiffs did not forfeit their argument pertaining to the value of the part taken. The allegations appear in the SAC and are re-alleged for purposes of appeal in the TAC. We also find that plaintiffs did not forfeit their argument about comparable 5A. Although there are no allegations in any of plaintiffs' complaints about comparable 5A specifically or about how it could have been utilized to challenge the State's expert's valuation of the property, there are allegations about Dommermuth failing to respond to the motions *in limine* generally, and the circuit court considered the parties' arguments about comparable 5A's use during the hearing on the motion to dismiss the SAC. See *Greatbanc*, 2018 IL App (1st) 171315, ¶ 15 (noting that the

argument was waived because there no written *or* oral objection). Thus, we do not consider the comparable 5A argument forfeited by plaintiffs.

¶ 36    Turning to the merits, plaintiffs argue that the circuit court failed to appreciate that IDOT did not challenge Thouvenell's opinion as to the part taken and the admissibility of comparable 5A. Thus, had Goedert responded to IDOT's motions *in limine* or motion for summary judgment, plaintiffs could have presented evidence about the value of the part taken and comparable 5A to challenge IDOT's expert's opinion of value. In other words, despite Judge White's determination that Thouvenell violated the unit rule and that his value of the whole was incorrect, Thouvenell could still have opined about the value of the part taken. Moreover, plaintiffs contend that comparable 5A, which the State did not challenge, could have been used to defeat IDOT's motion for summary judgment.

¶ 37    Dommermuth advances several arguments in response. First, it argues that plaintiffs are mistaken that IDOT did not challenge Thouvenell's opinion as to value of the part taken in its motions *in limine*. Second, he argues that plaintiffs incorrectly presume that merely challenging the motions *in limine* would have resulted in Thouvenell's opinion about the value of the part taken being allowed into evidence. Specifically, he notes that plaintiffs ignored that Thouvenell admitted in his deposition that: "(1) he reached his Part Taken opinion by multiplying his opinion of $22 per square foot by the area of the taking; and (2) that his measurement of the area of the taking was 'a little higher' than what it should have been." Dommermuth relies on *Soto v. Gaytan*, 313 Ill. App. 3d 137 (2000), for the proposition that Thouvenell's latter admission alone would bar his opinion of value of the part taken because it lacks proper foundation, and on *Department of Transportation v. Kelley*, 352 Ill. App. 3d 278 (2004), for the proposition that it is improper to multiply the per square foot value of the whole by the area of the part taken. Third, Dommermuth

argues that plaintiffs can only speculate that Thouvenell's opinion would not have been barred in its entirety. Finally, he notes that plaintiffs themselves generally acknowledge that nothing could have defeated IDOT's meritorious motions *in limine*.

¶ 38 In reply, plaintiffs assert for the first time that proximate cause is an issue for the trier of fact and may not be resolved as a matter of law.

¶ 39 We agree with Dommermuth that the circuit court properly dismissed count I of the TAC. To prevail Goedert would have first had to overcome the inherent flaws in Thouvenell's opinion of value. However, plaintiffs offer no argument that could have been advanced with respect to the value of the part taken when it was based on the flawed value of the whole. It is undisputed that Thouvenell violated the unit rule, which requires the property to be valued as a whole and not as the sum of its parts. See *Lotta*, 27 Ill. 2d at 456-57. An appraiser may not value the whole property by determining the value of the land and then simply add the contributory value of the building (see *id.*), but Thouvenell did just that when he added the value of the whole, $35,475,418, to the value of the restaurant building, $1,232,280. Because his opinion of the value of the part taken was based entirely on the value of the whole, and value of the whole admittedly violated the unit rule, Thouvenell's opinion would not have been admitted into evidence. To be sure, admitting Thouvenell's opinion would "constitute[ ] palpable and reversible error" because a "jury could potentially be misled or confused." (Internal quotation marks omitted.) *Department of Transportation v. White*, 264 Ill. App. 3d 145, 150 (1994).

¶ 40 We also reject plaintiffs' argument that because IDOT's motions *in limine* challenged only Thouvenell's opinion of the value of the property, he would have been able to testify as to his opinion of the value of the part taken. But IDOT's motions *in limine* sought to bar Thouvenell's opinions in their entirety: "Any one of these failures [asserted in IDOT's motions *in limine*] would

render Thouvenell's opinions void and inadmissible, but here Thouvenell violated every principle of how to value property in an eminent domain case. This Court should bar his testimony in *all* respects." (Emphasis added.) And although IDOT did not necessarily argue that the value of the part taken was incorrect, its argument about the value of the whole applied with equal force to the value of the part taken. If the value of the part taken is based on the value of the whole, then the value of the part taken is improperly valued where the whole is improperly valued. See *Tri State Park District v. First National Bank of Cicero*, 33 Ill. App. 3d 348, 351 (1975) (" 'In arriving at the fair cash market value of the property taken, you should determine its value considered as a part of the whole tract before the taking and not its value as a piece of property separate and disconnected from the rest of the tract.' " (quoting Illinois Pattern Jury Instructions, Civil, No. 300.44 (2d ed. 1971))).

¶ 41    Turning to "comparable 5A," plaintiffs argue that Goedert "could have raised this unchallenged comparable and preserved Plaintiffs' ability to cross-examine IDOT's expert," thereby defeating IDOT's summary judgment motion. In response, Dommermuth argues, *inter alia*, that plaintiffs cite no authority for the proposition that the sole "unchallenged" comparable would be sufficient to raise a question of fact defeating summary judgment, Thouvenell's comparables that IDOT did challenge would have also resulted in "comparable 5A" being barred, and finally if an appraiser relies on only one comparable property, then it must be a sale of the subject property.

¶ 42    Judge White concluded that Thouvenell's appraisal was "unreliable" in part because six out of the seven comparables relied on by Thouvenell were 95% smaller in area than the subject property, and critically, Thouvenell did not consider land sales in the area that were "clearly more

19

comparable" to the subject property. Moreover, Judge White noted that the appraisal was significantly higher than previous offers for the subject property.

¶ 43    We agree with Dommermuth that no argument could have been raised in response to IDOT's motions *in limine* that would have resulted in Judge White allowing comparable 5A into evidence. Thouvenell could not have relied solely on comparable 5A as the basis for his opinion of value, because the only instance in which an appraiser can rely on a single comparable sale is where that sale is of the subject property. See *Department of Public Works & Buildings v. Klehm*, 6 Ill. App. 3d 752, 758 (1972). "Comparable 5A" is not the subject property. Therefore, we find that the circuit court did not err in dismissing with prejudice plaintiffs' allegations of legal malpractice in count I pertaining to Thouvenell's opinion of value, either based on the value of the part taken or "comparable 5A."

¶ 44    B. The Circuit Court Did Not Err in Rejecting Plaintiffs' Allegations in Count II That They Would Have Pursued a Different Course of Action Had Goedert Advised Them of the Circuit Court's Adverse Rulings and the Consequences Thereof.

¶ 45    Plaintiffs next argue that the circuit court erred in (1) concluding as a matter of law that their allegation in count II, that they would have repaid IDOT the amount by which they were overpaid before interest started to accrue had Goedert advised them about the merits of the case and their potential liability for interest, was conclusory and belied by their own conduct and (2) rejecting their claim that they lost an opportunity to negotiate more favorable compensation and reduce the amount of interest damages. Plaintiffs specifically take issue with the circuit court: (1) taking judicial notice of the record in the underlying condemnation case, including court filings, to conclude that plaintiffs would not have acted differently because plaintiffs appealed adverse judgments even with successor counsel and (2) reasoning that plaintiffs' allegations in that

regard were incredible. As for judicial notice, plaintiffs assert that intent of a party is not a fact subject to judicial notice nor is a credibility determination proper at the motion to dismiss stage of the proceedings. In response, Dommermuth argues that plaintiffs take the circuit court's use of the word "credibility" out of context and that the circuit court properly took judicial notice of plaintiffs' court filings and appeals in the underlying case to find that plaintiffs' allegations were conclusory.

¶ 46    Plaintiffs' arguments fail for two reasons. First, plaintiffs did not allege that IDOT would have accepted repayment of $1.58 million or a lesser amount in settlement to resolve the matter prior to the motion for summary judgment. Plaintiffs do not dispute this.

¶ 47    Second, in our review of the transcript of the hearing on the motion to dismiss the TAC in full, we find the circuit court did not make a credibility determination but instead found that the allegations in the TAC were conclusory when juxtaposed against the record of plaintiffs' course of conduct in the condemnation case. The circuit court properly took judicial notice of plaintiffs' positions expressed in their court filings and appeals in the underlying action. See *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 5 (taking judicial notice of appeals and record of underlying case, including orders and pleadings). Pursuant to Illinois Rule of Evidence 201(b) (eff. Jan. 1, 2011), a fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." It is undisputed that plaintiffs did in fact challenge the judgments against them on appeal, including the amount of their *pro rata* share of the judgment that the circuit court imposed on it, as well as in a subsequent appeal the amount of interest they owed. Count II of the TAC alleged that had Goedert advised plaintiffs to satisfy the judgment before it started to accrue interest, they would have paid

that amount and would not have pursued the matter further. Yet, as the circuit court keenly observed, these allegations plainly conflict with what plaintiffs actually did after retaining successor counsel. While we agree with plaintiffs that the circuit court must take the allegations in the complaint in the light most favorable to them on a motion to dismiss, here the complaint fails to allege any nonconclusory facts to support their contention that they would have pursued a different course and strategy. Moreover, the conclusory facts that they do allege are undercut entirely by the record, which demonstrates that plaintiffs pursued a contrary course and strategy once they engaged successor counsel. Thus, we find that plaintiffs failed to state a claim for legal malpractice in count II of the TAC.

¶ 48                                    III. CONCLUSION

¶ 49       We agree with Dommermuth that this case admits of only one conclusion. Despite being aware that the 2006 preliminary compensation was always going to be subject to proceedings to determine final compensation, plaintiffs litigated against IDOT for over a decade, never relenting on their position that they were entitled to keep the entirety of the preliminary compensation even after the size of the taking was reduced. Plaintiffs' retained expert, Thouvenell, tried to match his opinions with plaintiffs' desire to keep the entirety of the preliminary compensation. In so doing, he rendered opinions and testimony that were without foundation. Without any opportunity to correct Thouvenell's errors, Goedert and Dommermuth could not have prevented the ultimate outcome. Even after retaining successor counsel, plaintiffs kept fighting in this court and the circuit court. During postjudgment proceedings, plaintiffs made their position clear: IDOT's excess compensation judgment against them was too high and plaintiffs should not be liable for any pre- or postjudgment interest. When the circuit court rejected those positions, plaintiffs turned around and tried to argue that they never would have pursued that course of action had Goedert and

22

Dommermuth simply told them of the judgment earlier. However, in the face of plaintiffs undisputed course of conduct to the contrary, the circuit court properly rejected their claim.

¶ 50    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 51    Affirmed.

*Petey's Two Real Estate, LLC v. Goedert*, **2024 IL App (1st) 220960**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-L-000983; the Hon. Jerry A. Esrig, Judge, presiding. |
| **Attorneys for Appellant:** | Daniel F. Konicek and Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, for appellants. |
| **Attorneys for Appellee:** | Kimberly E. Blair, Joseph J. Stafford, Robert F. Merlo, and Thomas Duff, of Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago, for appellees. |