2024 IL App (1st) 232072-U

FIRST DISTRICT,
SIXTH DIVISION
December 13, 2024

No. 1-23-2072

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| RUBEN YBARRA, YRY HOLDINGS, LLC, and BOULDER HILL APARTMENTS, LLC, | ) ) ) | |
| | ) | Appeal from the |
| Plaintiffs-Appellants, | ) ) | Circuit Court of Cook County, Illinois. |
| v. | ) ) | |
| CENTRUST BANK, N.A. and ERIC FERLEGER, | ) ) | No. 22 L 10392 |
| Defendants | ) ) | |
| | ) | Honorable |
| (Centrust Bank, N.A., | ) ) | John J. Curry, Judge Presiding. |
| Defendant-Appellee). | ) ) | |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Dismissal of plaintiffs' first amended complaint and denial of leave to amend is affirmed where (1) plaintiffs' complaint is based on alleged misconduct that occurred in a prior action, (2) plaintiffs fail to state a claim upon which relief can be granted, and (3) the trial court did not abuse its discretion in denying leave to amend.

¶ 2    Plaintiffs Ruben Ybarra (Ybarra), YRY Holdings, LLC (YRY), and Bounder Hill

Apartments, LLC (BHA) (collectively, plaintiffs) appeal from the dismissal with prejudice of

their first amended complaint against defendants Centrust Bank, N.A. (Centrust) and Eric Ferleger. They also appeal the court's denial of their motion for leave to file a second amended complaint and ask for a limited remand. We deny plaintiffs' motion for limited remand and affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Parties

¶ 5        This is just one of many commercial disputes between the parties. It stems from a relationship dating back almost twenty years between plaintiff Ruben Ybarra and his former employer Centrust Bank. Between 2006 and 2008, Ybarra served as a vice president and loan officer at Centrust. Ybarra defaulted on loans he procured from Centrust to invest in real estate. Centrust sued Ybarra and obtained judgments totalling over $2.6 million. This figure includes a $1,142,414.88 judgment entered on January 28, 2010, in *Centrust v. Ybarra,* 2010 L 50077 ("case 50077").

¶ 6        Shortly thereafter, Bruce Teitelbaum, Ruben Ybarra's former business partner, approached Ybarra's wife Yolanda to invest in certain business ventures. Due to Ruben Ybarra's financial woes, Teitelbaum went to Yolanda instead of Ruben. The first amended complaint admits Yolanda created various entities to enable her to take part in the real estate transactions despite her husband's substantial debt and judgments against him. One of these entities was YRY Holdings, LLC, which had three members: the Yolanda Ybarra Revocable Trust, the Ybarra Children Investment Trust, and the Ruben Ybarra Family Insurance Trust. Ruben Ybarra was manager of YRY but not a member.

¶ 7        In 2011, YRY and Shayarin LLC (Teitelbaum's company) became members of Boulder 2011 LLC, which owned the Boulder Hill Apartments. Ruben Ybarra and Teitelbaum were

managers of Boulder 2011. The parties had a fallout and in August 2014, Teitelbaum and Shayarin sued YRY, Ybarra, and Boulder 2011 to dissolve Boulder 2011 and compel the sale of the Boulder Hill Apartments. Per an April 2015 settlement agreement, YRY purchased all ownership interest in the Boulder Hill Apartments for $1.6 million.

¶ 8     In May 2015, YRY formed BHA, an Illinois LLC, with YRY as its sole member. BHA obtained title to the Boulder Hill Apartments in June 2015.  By then, Ybarra owed millions of dollars on the Centrust judgments. Centrust had not actively pursued collection on these judgments until Teitelbaum told Centrust about Ybarra's "asset protection plan" to shield investments from his creditors through YRY and BHA.

¶ 9      On August 18, 2015, Teitelbaum, in his capacity as the president of CNTRST Debt Recovery (CDR), executed an "Agreement of Creditors" with Centrust. The Agreement provides that in exchange for hiring, paying, and directing lead counsel in supplementary collection proceedings against Ybarra, CDR would receive 70% of any money recovered and Centrust would receive the remaining 30%.

¶ 10     In September 2015, Teitelbaum made a similar deal with his friend Eric Ferleger who was office manager for Select Funding LLC. Select Funding held mortgage loans against Kingston Property, a company in which some of the plaintiffs held membership interests. At Ferleger's direction, Select Funding assigned the underlying mortgage and right to pursue litigation against Ybarra to CDR. Plaintiffs contend the Kingston Property litigation "formed a template for the larger scheme, relating to the Boulder Hill Apartments."

¶ 11                          B. Supplementary Proceedings

¶ 12     On January 7, 2016, Centrust filed motions for charging orders against Ybarra's alleged interest in YRY in five supplementary proceedings, including case 50077. The motion for

- 3 -

charging order in case 50077 was withdrawn after Ybarra's counsel informed Centrust that he was a manager, not a member of YRY. On July 28, 2016, in all cases except case 50077, Centrust sought to impose a lien on Ybarra's "non-existent membership interest in YRY." On September 9, 2016, in all cases except case 50077, Centrust filed motions to appoint Ferleger as a receiver "to enforce the charging orders over [Ybarra's] alleged but *** non-existent distributional membership interest in YRY." According to the first amended complaint, the motions "falsely alleged that [Ybarra] was the managing member of YRY" and did not reveal Ferleger's role in assigning the Kingston Property mortgage to CDR. The motions for receiver were granted on September 14, 2016.

¶ 13        In September 2018, Centrust filed an emergency motion in case 50077 to appoint a receiver for BHA and requested an expedited briefing schedule. As part of the order, "BHA agreed that pending resolution of the Bank's emergency motion *** BHA's operating account would be frozen for the month during which the receiver motion was pending." When Centrust discovered Ybarra was only a manager, not a member, of YRY, it withdrew the motion on June 4, 2019, and Ferleger was never appointed as a receiver in case 50077. Plaintiffs allege that although Centrust withdrew the motion, it "did not agree to withdraw or vacate the portion of the briefing schedule which froze BHA's operating agreement." As such, the freeze order remained in place. Plaintiffs claimed this freeze order unjustifiably interfered with their contractual relationship with their lender and prevented distributions to YRY.

¶ 14        Months later, on April 10, 2019, Centrust filed a "Motion for Judicial Determination *** to sell" the Boulder Hill Apartments per 735 ILCS 5/2-1402, in case 50077. According to plaintiffs, the motion "falsely alleged that [Ybarra] was a member of YRY." Because of the

motion, "YRY was restrained from alienating, transferring, or selling the Boulder Hill Apartments."

¶ 15    On July 12, 2019, YRY and BHA filed petitions to intervene in case 50077 to "dispute and try to secure relief from the Freeze Orders and prevent the efforts from Defendants' seizing and selling the Boulder Hill Apartments." Several days later, Real Realty, LLC, which managed the Boulder Hill Apartments, produced documents showing Ybarra did not control BHA's operating accounts and that the Boulder Hill Apartments were competently managed.

¶ 16    On December 31, 2019, YRY and BHA filed a notice of adverse claim in opposition to Centrust's motion for judicial determination. At a July 10, 2020, status hearing, Centrust's counsel withdrew, and Teitelbaum indicated that the Agreement of Creditors "was soon to be terminated and [CDR] [would] be 'exiting the case.' " This same day, CDR and Centrust terminated the Agreement of Creditors. In July 2020, Centrust assigned its judgments against Ybarra to ABS Lincolnwood, LLC.

¶ 17                              C. Original Complaint

¶ 18    More than two years later, on November 21, 2022, plaintiffs filed the instant action against Centrust, Centrust's president James McMahon, Teitelbaum, CDR, Ferleger, and various counsel that represented Centrust in case 50077, including, Markoff Law, LLC, Kluever & Platt, LLC, Doug Giese, and M. Reas Bowman. The original complaint alleged that these defendants engaged in a "scheme" to "harass" plaintiffs through supplemental proceedings in case 50077. Plaintiffs asserted claims for champerty, abuse of process, unfair and deceptive business practices, tortious interference with contract, tortious interference with prospective economic advantage, breach of contract, and violation of the Illinois Attorney Act.

¶ 19    On January 23, 2023, the trial court granted plaintiffs' oral motion to voluntarily dismiss defendants Centrust, CDR, and Teitelbaum under 735 ILCS 5/2-1009 (West 2022).[1] On plaintiffs' motion, the court vacated the voluntary dismissal of Centrust, leaving these remaining defendants: Centrust, Ferleger, McMahon, Markoff Law, Kluever & Platt, Giese, and Bowman.

¶ 20    Centrust and McMahon, Giese, and Kluever & Platt and Bowman, filed three separate motions to dismiss the original complaint. On July 11, 2023, the trial court dismissed McMahon, with prejudice, dismissed the champerty claims against Centrust and Giese with prejudice, and dismissed all other claims without prejudice and with leave to amend. The court also granted plaintiffs' oral motion to voluntarily dismiss Kluever & Platt and Bowman as defendants.

¶ 21                        D. First Amended Complaint

¶ 22    On July 10, 2023, plaintiffs filed the first amended complaint against two defendants only: Centrust and Ferleger. This operative complaint, which is at issue in this appeal, asserts claims for tortious interference with contract (counts I and II) and tortious interference with prospective economic advantage (count III).

¶ 23    In count I, plaintiffs allege Centrust intentionally interfered with BHA's operating agreement by filing the emergency motion to appoint a receiver in case 50077 and not agreeing to vacate the freeze order after withdrawing the motion. Plaintiffs claim Centrust "caused damages to BHA and YRY by freezing its bank accounts, causing it to lose liquidity and profits, preventing distributions to YRY, and loss of business opportunities." In count II, Plaintiffs allege Centrust's motion to appoint a receiver was "not filed for any legitimate purpose, but only to

---

[1] CDR and Teitelbaum sued plaintiffs in the United States District Court for the Northern District of Illinois. Plaintiffs counter sued, asserting claims for champerty, abuse of process, and tortious interference with contract and prospective economic advantage. See *CNTRST Debt Recovery v. Ybarra*, No. 21 C 2702, 2024 WL 1435099 (N.D. Ill. Apr. 2, 2024).

interfere with BHA's" June 2018 loan agreement with its lender T2 Boulder Hill Montgomery LLC (T2), and its May 2018 property management agreement with Real Realty. In count III, plaintiffs allege the "Motion for Judicial Determination, *** the motion(s) for appointment of receiver, and judicial freeze orders" interfered with plaintiffs' April 2021 contemplated loan with Avant Capital Partners (Avant), which "would have been several interest points lower than the T2 loan." Plaintiffs claim they "did not meet Avant's requirements" for the loan because of these various filings and the freeze order and, thus, were damaged.

¶ 24    Ferleger, a named defendant, has not been served a summons and has not filed an appearance in the trial court or this appeal. Aside from the allegation in paragraph 108 of the first amended complaint, which states "[Centrust], through its agent Ferleger," there are no material references to Ferleger's direct actions in case 50077, which forms the basis of plaintiffs' first amended complaint. Although Centrust filed a motion to appoint Ferleger as receiver in case 50077, the court did not grant the motion, and he was not involved in the case.

¶ 25    E. Centrust's Motion to Dismiss and Plaintiffs' Motion for Leave to Amend

¶ 26    On August 4, 2023, Centrust filed a combined motion to dismiss plaintiffs' first amended complaint per section 2-619.1 of the Code. See 735 ILCS 5/2-619.1 (West 2022). Under section 2-615 (735 ILCS 5/615 (West 2022)), Centrust argued that plaintiffs could not allege a breach of BHA's operating agreement where it does "not require distributions of specific amounts on specific dates" (emphasis omitted). Centrust further asserted that plaintiffs did not allege Centrust's knowledge of the contracts at issue in counts I and II, any breach of the contracts, or any wrongful conduct by Centrust. As to count III, Centrust argued plaintiffs did not allege Centrust knew of plaintiffs' contemplated loan with Avant or engaged in any conduct directed at Avant. Under section 2-619 (735 ILCS 5/2-619 (West 2022)), Centrust asserted that "[t]here is

no civil cause of action for misconduct in prior litigation" and that plaintiffs' claims are barred by *res judicata*.

¶ 27 Plaintiffs responded, in relevant part, that Centrust is "not entitled to a litigation privilege" and *res judicata* does not apply. Plaintiffs also argued Centrust "must [have] had knowledge of the existence of an operating agreement between the Plaintiffs LLCs and members" and that Centrust "caused Plaintiff LLCs to breach [the] covenant of good faith and fair dealing *** by loss of use of distributions ***." Plaintiffs conceded that count I should be styled as interference with prospective economic advantage instead of tortious interference with contract. Instead of arguing the sufficiency of counts II and III, plaintiffs agreed the counts "should have been combined into a single count for tortious interference with contract and/or prospective economic advantage related to Plaintiff's [*sic*] real estate interests." Plaintiffs raise the exact same arguments on appeal.

¶ 28 On October 4, 2023, the day before oral argument on Centrust's motion to dismiss, plaintiffs filed a motion for leave to file a second amended complaint. They did not attach a proposed second amended complaint to the motion, but the record shows they filed one the next day at 10:45 a.m. Following oral argument on October 5, 2023, the trial court granted Centrust's motion to dismiss "for the reasons provided in open court," dismissed plaintiffs' first amended complaint "in its entirety, with prejudice," and denied plaintiffs leave to amend. The order does not indicate whether the court granted the motion to dismiss under section 2-615 or 2-619 of the Code and does not explain why the court denied leave to amend. Plaintiffs appeal this order.

¶ 29                                    II. ANALYSIS

¶ 30                        A. Plaintiffs' Motion for Limited Remand

¶ 31        More than five months after filing their notice of appeal pursuant to Illinois Supreme Court Rules 301 and 303, plaintiffs filed a motion for limited remand, which we took with the case. Plaintiffs assert that because they did not "formally nonsuit" the originally named defendants, Ferleger, Giese, and Markoff Law, "all claims as to all parties [have] not been resolved." They argue absent a finding under Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)), we lack jurisdiction over the appeal. Plaintiffs, therefore, ask us to remand to the trial court with instructions to nonsuit these parties. We find remand is not necessary.

¶ 32        Under Rule 301, "[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Under Rule 303(a), "[t]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from ***." Ill. S. Ct. R. 303(a) (eff. July 1, 2017). On October 5, 2023, the circuit court granted a final dismissal order, dismissing the first amended complaint "in its entirety, with prejudice" as to all parties and claims. On November 6, 2023, plaintiffs filed a timely notice of appeal. The operative first amended complaint names only two defendants: Centrust and Ferleger. Giese and Markoff Law were omitted as defendants in the first amended complaint and do not need to be formally nonsuited.

¶ 33        Section 2-616(a) of the Code contemplates the dismissal of a party through amendment of a pleading. It provides, "[a]t any time before final judgment amendments may be allowed on just and reasonable terms, *** *dismissing any party* ***." (Emphasis added.) 735 ILCS 5/2-616 (West 2022); see, *e.g.*, *Liberty Mutual Insurance Co. v. American Home Assurance Co., Inc.*, 368

Ill. App. 3d 948, 953 (2006) ("Liberty's amended complaint also dropped *** Zurich as a defendant"); *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 453 (2006) (noting that "[p]laintiffs' amended complaint omitted one of the originally named doctors, Elda H. Simpson, M.D., leaving the hospital and four doctors as defendants"). Because Giese and Markoff Law were dismissed effectively when plaintiffs omitted them as defendants in the first amended complaint, remand is not necessary to confer appellate jurisdiction.

¶ 34    As to defendant Ferleger, plaintiffs' failure to nonsuit him does not defeat appellate jurisdiction. We recognize that Ferlerger is still a party even though he was never served with summons and did not file an appearance in the trial court or this appeal. Nonetheless, where, as here, the dismissal of the complaint disposes of the case in its entirety, the presence of an unserved defendant, who is alleged to be an agent for the served defendant, does not render an order unappealable, even in the absence of Rule 304(a) language.

¶ 35    For instance, courts have found jurisdiction when the served defendants and unserved defendants represent a "unified tortfeasor," and the dismissal order dismisses the complaint in its entirety. See *Merritt v. Randall Painting Co.*, 314 Ill. App. 3d 556, 559 (2000) (unserved defendants were allegedly agents and employees of served defendant); *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 455 (2006) (unserved defendants were agents of served defendant). Additionally, appellate jurisdiction has been found where the dismissal order indicates the court intended to dismiss the complaint in its entirety as to all defendants. See *Mayle v. Urban Realty Works, LLC*, 2020 IL App (1st) 191018, ¶ 40 (an unserved defendant does not defeat appellate jurisdiction "where the trial court's order indicated that it intended to dismiss the complaint in its entirety as to all defendants"); *Byer Clinic & Chiropractic, Ltd. v. State Farm Fire & Casualty Co.*, 2013 IL App (1st) 113038, ¶ 14 (the court's "decisive word

choice, 'this case is dismissed' *** is an all-encompassing dismissal order confirming the court's intention to dismiss the complaint in its entirety as to all named defendants," including the defendant who had not appeared); *Petey's Two Real Estate, LLC v. Goedert*, 2024 IL App (1st) 220960, ¶ 30 (jurisdiction was proper even though the "circuit court did not specifically dispose of the claim against [a defendant], who never appeared in the case," where the court dismissed plaintiffs' complaint with prejudice, entered a final order disposing of the case "in its entirety," and took the case off call).

¶ 36    Here, the dismissal order indicates clearly the court's intent to dismiss the first amended complaint in its entirety as to all defendants, including Ferleger. The order expressly says, "[p]laintiffs' First Amended Complaint is dismissed, in its entirety, with prejudice. *** All future pending dates are hereby stricken." In addition, plaintiffs expressly refer to Ferleger as Centrust's agent in paragraph 108 of the first amended complaint. Therefore, we find the dismissal order entered on October 5, 2023, is a final and appealable order and we have jurisdiction under Rules 301 and 303 without the need to remand.

¶ 37                                    B. Motion to Dismiss

¶ 38    Centrust filed a combined section 2-619.1 motion to dismiss (735 ILCS 5/2-619.1 (West 2022)), but the trial court's order does not say whether it granted dismissal under section 2-615 or 2-619 of the Code. Accordingly, we address Centrust's motion to dismiss under both sections. Under both sections, we review *de novo* an order granting a motion to dismiss and may affirm on any basis in the record regardless of whether the trial court relied on that basis, or its reasoning was correct. See *O'Callaghan v. Satherlie,* 2015 IL App (1st) 142152, ¶17.

¶ 39                                    1. Section 2-619 Motion to Dismiss

¶ 40        A motion to dismiss under section 2-619 (735 ILCS 5/2-619 (West 2022)) admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83. When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich,* 231 Ill. 2d 474, 488 (2008).

¶ 41        Plaintiffs contend that Centrust's motion to dismiss under section 2-619 should not have been granted under the absolute litigation privilege or *res judicata.* Centrust concedes *res judicata* does not apply, so we need not address it. Further, Centrust did not assert the absolute litigation privilege as grounds for dismissal. Rather, Centrust moved to dismiss plaintiffs' claims because there is no cause of action for alleged misconduct that occurred in a prior action except for malicious prosecution and abuse of process. Plaintiffs did not file a reply brief to refute this contention, and we find Centrust has the better of it.

¶ 42        Illinois recognizes only two causes of action, malicious prosecution and abuse of process, for the wrongful filing of a lawsuit. See *Pantone v. Demos,* 59 Ill. App. 3d 328, 331 (1978); *Lyddon v. Shaw*, 56 Ill. App. 3d 815, 821-22 (1978); *Havoco of America*, *Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983). Save for these two claims, petitions to redress injuries resulting from alleged misconduct in judicial proceedings should be brought in the same litigation, not a separate suit before a new tribunal or judge. See *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 19; *O'Callaghan,* 2015 IL App (1st) 142152, ¶ 28; *Harris Trust Sav. Bank v. Phillips*, 154 Ill. App. 3d 574, 585 (1987). This makes sense, for otherwise litigation would

never end and other courts would be called upon to review the actions of parties in separate litigation of which they have no personal knowledge. See *Harris*, 154 Ill.App.3d at 585 (noting that it is "improper for a trial court to review previous litigation which has gone on before another judge" and that "public policy precludes a second lawsuit because otherwise there would be no end to litigation"); *Johnson*, 2014 IL App (1st) 122677, ¶ 19 (same); *O'Callaghan,* 2015 IL App (1st) 142152, ¶ 28 (same).

¶ 43        The first amended complaint is wholly premised on communications and actions taken in case 50077. The complaint consists of three counts for tortious interference with contract and prospective economic advantage, not claims for malicious prosecution or abuse of process. Had plaintiffs wanted to seek redress for their injuries from alleged misconduct in case 50077, it was incumbent upon them to do so using traditional motion or pleading practice and sanctions procedures in that case. The trial court was correct to dismiss plaintiffs' complaint for tortious interference and decline to review litigation which went on before another judge in case 50077. See *Harris,* 154 Ill. App. 3d at 585; see also *Havoco of America*, *Ltd*., 702 F.2d at 647 (holding that Illinois law prohibits a plaintiff from basing a cause of action for tortious interference with business opportunity on the wrongful filing of a lawsuit).

¶ 44                                2. Section 2-615 Motion to Dismiss

¶ 45        Plaintiffs also contend the court erred in granting Centrust's motion to dismiss with prejudice under section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)).

¶ 46        A motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms,* 213 Ill.2d 433, 440 (2004). The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich v. Mraz,* 203 Ill. 2d 223, 228 (2003). In making this

determination, all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts are taken as true and construed in the light most favorable to the plaintiffs. *Young,* 213 Ill. 2d at 441. A section 2-615 motion to dismiss should only be granted with prejudice if no set of facts can be proven that would entitle a plaintiff to relief. *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008).

¶ 47                                  a. Count I: Tortious Interference with Contract
¶ 48                                  (BHA and YRY and Their Operating Agreement)

¶ 49      Count I is for tortious interference with BHA and YRY and the contractual provision of their operating agreement that provides for discretionary distributions. To state a claim for tortious interference with contract, plaintiffs must plead: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." (Internal quotation marks omitted.) *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989).

¶ 50      The court properly dismissed count I because plaintiffs failed to allege well-pleaded facts showing a contractual right to distributions that were due and Centrust's awareness of the distributional term of the operating agreement that was supposedly breached. Plaintiffs merely state in conclusory terms that Centrust "knew that BHA was an LLC and pursuant to its operating contract would make distributions to its member: YRY." However, to satisfy the knowledge requirement, "defendant must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of that contract." *Law Offices of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083, ¶ 39.

¶ 51          Centrust's mere awareness that BHA is a limited liability company and has an operating agreement hardly establishes that Centrust knew of the distributional term in the operating agreement, or that the freeze order, to which plaintiffs agreed, would induce a breach of that term. To this end, *Chejfec* is right on point. There, the court affirmed the dismissal of a tortious interference with contract claim where the plaintiff failed to plead any facts to show the defendants had knowledge of specific paragraphs of the lease with the third party or of the contract rights and obligations contained in those paragraphs. See *id.* ¶ 41.

¶ 52          Plaintiffs also fail to allege any subsequent breach of contract caused by defendants' wrongful conduct. This is fatal to count I. See *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1038 (1998) (plaintiff's complaint "wholly fail[ed] to state a cause of action for tortious interference with contract" where it "nowhere allege[d] any breach of contract" by the third party).

¶ 53          Plaintiffs admit the distributions were discretionary and that YRY was not contractually due or owed distributions while the freeze order was in effect. What's more, BHA agreed to freeze its accounts as part of the litigation. It was their own doing that operated to their detriment.

¶ 54          Citing *Inteliquent, Inc. v. Free Conferencing Corp.*, No. 16-cv-06976, 2017 WL 1196957 (N.D. Ill. Mar. 30, 2017), plaintiffs argue the freeze order caused a breach of the covenant of good faith and fair dealing "that discretionary distributions will be paid when distributions were not made." Plaintiffs' reliance on *Inteliquent* is perplexing, for in *Inteliquent*, the court held that counter-plaintiffs failed to state a claim for tortious interference with contract where they did not allege "the existence of a valid and enforceable contract between the plaintiff and another, and a subsequent breach by the other, caused by the defendant's wrongful conduct." (Emphasis omitted.) *Id.* at *17. The same is true here.

¶ 55        Curiously, plaintiffs argue on appeal that count I "probably should have been styled as interference with prospective economic advantage," but make no effort to explain why or describe how the facts would satisfy the elements. As such, they have not presented a cogent legal argument and have forfeited the argument. See *Maday v. Township H.S. Dist. 211,* 2018 IL App (1st) 180294, ¶ 50 (appellant forfeited argument by including a single sentence in brief without argument). Moreover, this concession highlights the deficiencies in count I, which plaintiffs themselves recognize. For these reasons, we find the court properly dismissed count I for failure to state a cause of action for tortious interference with BHA and YRY and their operating agreement.

¶ 56                        b. Count II: Tortious Interference with Contract
¶ 57                           (BHA's Relationship with T2 and Real Realty)

¶ 58        Rather than argue count II for tortious interference with contract is sufficiently pled, plaintiffs assert this count should have been combined into a single count with count III, and that their request to replead should have been granted. In essence, they admit dismissal of count II was proper under section 2-615. Had they not, we would still find dismissal of count II was proper insofar as plaintiffs do not allege that Centrust was aware of BHA's contracts with T2 and Real Realty. Nor do they allege any breach of those contracts or explain how the motion to appoint a receiver caused T2 and Real Realty to breach those contracts. Like count I, count II is replete with conclusions, not well-pleaded facts, and was properly dismissed.

¶ 59             c. Count III: Tortious Interference with Prospective Economic Advantage
¶ 60                              (Avant Contemplated Loan)

¶ 61        We also find count III was properly dismissed, as it fails to state a claim for tortious interference with prospective economic advantage, which requires: " '(1) [a] reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the

expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.' " *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 300-01 (2001) (quoting *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07 (1996)). As for element number three (3), "defendant's interference must be directed toward a third party." *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 887-88 (1997).

¶ 62        Plaintiffs allege Centrust was "aware of Plaintiff's contractual relationship with its lender T2, and desires to re-finance the loan." However, they do not allege Centrust was aware of plaintiffs' expectation of receiving the loan from Avant. Nor do they allege any facts to show Centrust took action directed at Avant to prevent plaintiffs from receiving the loan. They simply allege that by virtue of Centrust's actions in case 50077, their ability to enter into the contemplated loan with Avant did not occur. This is not enough to state a cause of action. See *Boffa Surgical Group LLC v. Managed Healthcare Associates Ltd.*, 2015 IL App (1st) 142984, ¶ 28 ("[i]t is not enough for the defendant's action to impact a third party; rather, the defendant's action must be directed towards the third party").

¶ 63                                    C. Denial of Leave to Amend

¶ 64        Recognizing the deficiencies in the first amended complaint, plaintiffs argue on appeal that the court abused its discretion in denying leave to amend. We disagree.

¶ 65        The decision whether to allow an amendment under section 2-616 of the Code (735 ILCS 5/2-616 (West 2022)) rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Indiana Insurance Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 932 (1993). Dismissal with prejudice and without leave to amend is appropriate when repleading

would be futile and no set of facts can be proven that would entitle a plaintiff to recover. See *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 584-85 (2003).

¶ 66    On October 4, 2023, the day before the court was set to rule on Centrust's motion to dismiss, plaintiffs filed a motion for leave to file a second amended complaint. They did not attach a proposed second amended complaint to the motion, but one was filed on October 5, 2023. On October 5, 2023, after hearing oral argument, the court granted Centrust's motion to dismiss with prejudice and denied plaintiffs' motion for leave to amend. The order provides no explanation for why the court denied leave to amend and plaintiffs failed to present a report of proceedings or bystander's report to support their claim of error. Without a complete record of the proceedings, we will presume the trial court had a sufficient legal and factual basis for denying the motion for leave to amend. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (without a transcript, there is no basis to find the trial court abused discretion in denying a motion to vacate); *Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 29 (lack of a transcript effectively precluded court from reviewing the denial of plaintiff's motion for leave to file a second amended complaint).

¶ 67    Furthermore, our independent review of plaintiffs' proposed second amended complaint leads us to conclude the trial court did not abuse its discretion in denying the motion for leave to amend. In determining if leave to amend should be granted, four factors are to be considered: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 68 The proposed second amended complaint contains five counts: one for conspiracy and four for tortious interference with prospective economic advantage or expectancy.[2] All suffer from the same flaws of the first amended complaint: They are based on communications and actions taken in prior litigation (case 50077) and assert conclusions, not well-pleaded facts, which cannot substitute for the necessary elements of a cause of action.

¶ 69 Count I for conspiracy is expressly based on facts set forth in case 50077, including Centrust's motion for judicial determination, the agreed freeze order, and motion to appoint a receiver. Count II bears a striking resemblance to count I of the first amended complaint, and count V is virtually identical to count III. Neither count cures the defects described above.

¶ 70 At most, plaintiffs newly allege in their proposed amended count II that, based on past practices, YRY had a reasonable expectancy of distributions. Merely providing proof of a past discretionary distribution is not sufficient to allege a reasonable expectation of a future distribution. More must be pled to satisfy the first element of tortious interference with expectancy.

¶ 71 Counts III and IV of the proposed second amended complaint seem to be an expanded version of count II of the first amended complaint, but these counts, like the rest of the counts, suffer from the same undoing: they are based on communications and actions taken in case 50077 and reassert conclusory allegations without well-pleaded facts to support the elements of tortious interference.

¶ 72 In addition, plaintiffs had a previous opportunity to amend, and surely plaintiffs' motion could have been brought well before the day of the hearing on Centrust's motion to dismiss. The proposed second amendment also would have prejudiced or surprised Centrust. Centrust had

---

[2] Count II is for tortious interference with reasonable expectancy only.

fully litigated the 50077 case and had the right to expect plaintiffs to have raised these claims then, not in front of a new judge in a separate lawsuit unless such suit was for malicious prosecution or abuse of process – neither of which plaintiffs pled in the second amended complaint. Considering the four *Loyola* factors, we cannot say the trial court abused its discretion in denying leave to amend where the allegations in the proposed second amended complaint are substantively identical to and arise from the same events as the first amended complaint, and plaintiffs already had one chance to amend their allegations.

¶ 73                                                    III. CONCLUSION

¶ 74          We deny plaintiffs' motion for limited remand.

¶ 75          We affirm the judgment of the circuit court of Cook County dismissing plaintiffs' first amended complaint and denying leave to amend.

¶ 76          Affirmed.